UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN HENRY RAY,

       Plaintiff,

vs                                Case No: 05-73910
                                   Honorable Victoria A. Roberts

DEPUTY HOGG, ET AL,

       Defendants.

_____/

## OPINION AND ORDER

### I.    INTRODUCTION

This matter is before the Court on: 1) Defendants' Partial Motion for Summary Judgment Pursuant to 12(b)(6) and Rule 56 (Doc. #31); and 2) Defendants' Motion for Summary Judgment on Remaining Claims Pursuant to 12(b)(6) and Rule 56 (Doc. #36). Defendants say they initially only filed a partial motion for summary judgment because it anticipated a Supreme Court ruling in *Scott v Harris*, ___ U.S. ___, 127 S.Ct. 1769 (2007), which is relevant to several of the claims raised in Defendants' second motion. Oral argument was heard on September 18, 2007.

### II.    BACKGROUND

Plaintiff John Henry Ray was held at the Wayne County Jail ("WCJ") from July 22, 2004 until December 17, 2004. He was there as a pretrial detainee until November 23, 2004, when he was convicted. The charges on which Plaintiff was ultimately convicted are not clear. But, it appears that he was charged with home invasion, two counts of first degree murder, two counts of felony murder, willful killing of an unborn

1

child, two counts of assault with intent to murder, two counts of armed robbery, felony firearm and possession of a weapon by a felon.

After his conviction, Plaintiff remained in the WCJ until December 17, 2004 when he was transported to Jackson prison--a Michigan Department of Corrections ("MDOC") facility.  Plaintiff brings this action against Wayne County, Wayne County Sheriff Warren Evans, Classification Director William Dent, Sergeant Robert Hogg and Sheriff Deputy Derrick Wade under 42 U.S.C. §1983 and state law.  He alleges that he was subjected to conditions and treatment in the WCJ which violated his constitutional rights.

Specifically, in Count I of Plaintiff's First Amended Complaint he alleges that Wayne County and Sheriff Evans violated his Fourth, Eighth and Fourteenth Amendment rights by interfering with his right to: 1) access to the courts and legal materials; 2) recreation; 3) telephone privileges; and 4) be free from cruel and unusual punishment.  Plaintiff bases these claims on his allegation that his access to the law library, recreational activities and telephone privileges was severely and improperly restricted because he was erroneously classified as a "level one maximum security inmate."  That is, he was not allowed to use the telephones; he had to ask jail staff to place calls and relay messages.  He was only allowed to engage in recreation and exercise in a small, isolated area, unlike inmates in the general population.  And, he could not freely use the law library; he was only allowed to make written requests for a maximum of two cases and one statute at a time.  *See* Def. Exh. H.  Plaintiff alleges that Defendants Hogg and Dent failed to take ameliorative action on his behalf despite Plaintiff's repeated inquiries about why his rights were being denied.  Defendant Dent allegedly stated that he would "continue to punish" Plaintiff and deliberately hindered

Plaintiff's access to his family and attorney.

Plaintiff also alleges in Count I that he was subjected to cruel and unusual punishment when the facilities were maintained at dangerously cold temperatures, his food was tampered with by or at the direction of prison personnel, and Defendant Wade handcuffed him so tightly he suffered permanent injuries. Per Plaintiff, Defendant Hogg failed to intervene when Plaintiff complained that the cuffs were too tight; he simply advised Plaintiff to file a grievance.

In Count II against Defendant Hogg and Count III against Defendant Dent, Plaintiff alleges that Defendants Hogg and Dent deprived him of his Fourth, Eighth and Fourteenth Amendment rights in violation of 42 U.S.C. §1983. In Count IV, Plaintiff alleges that Defendant Wade deprived him of his Fourth and Eighth Amendment rights in violation of 42 U.S.C. §1983, and that Wade was grossly negligent in violation of state law.

Defendants dispute Plaintiff's claim that he was improperly classified. And, despite the restrictive policies his classification dictated, Defendants assert that Plaintiff's library, recreation and telephone needs were adequately accommodated. Defendants further argue that there is no evidence to support Plaintiff's claims of excessive force, food tampering, and excessively cold temperatures.

Defendants request dismissal of Plaintiff's claims regarding limited access to the law library, recreation and telephone, and summary judgment on the remaining claims. Defendants also request summary judgment on Plaintiff's lack of recreation claim, as an alternative to dismissal. Plaintiff concedes that summary judgment is appropriate on his claims of food tampering and excessively cold temperatures, but opposes dismissal or

summary judgment on the remaining claims.

## III.   STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  Because a Rule 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of the witnesses." *Miller*, 50 F.3d at 377.  The court should deny a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v Gibson,* 355 U.S. 41, 45-46 (1957).  *See also Gazette*, 41 F.3d at 1064; *Miller*, 50 F.3d at 377. "While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  Rather, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *DeLorean*, 991 F.2d at 1240 (citations omitted).

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).  A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the

4

essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the

nonmoving party.  *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV.    ARGUMENTS AND ANALYSIS

### A.    Restricted Access to Library, Telephone and Recreation

Plaintiff alleges in Count I that Defendants Wayne County and Sheriff Evans

deprived him of his Fourth, Eighth and Fourteenth Amendment rights in violation of 42

U.S.C. §1983, by restricting his access to the jail library, telephone and recreation.

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be
> subjected, any citizen . . . the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

"To state a cause of action under §1983, a plaintiff must allege the deprivation of a right

secured by the United States Constitution or a federal statute by a person who was

acting under color of state law."  *Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir.

2003).

Defendants do not dispute that they acted under color of law or that Plaintiff

alleged a constitutional violation.  Instead, Defendants argue that Plaintiff's claims are

barred because they amount to a collateral attack on his conviction.  That is, Plaintiff

testified at deposition that he believes his lack of access to the law library may have

contributed to what he believes was an unfair trial and his ultimate conviction.  Def. Exh.

B at p. 25.  He also said that the lack of recreation caused him to suffer mental anguish

such that it was hard for him to concentrate on defending himself.  *Id* at 39.  And, he

testified that the denial of telephone privileges and visitation with his attorney and family

6

negatively affected his ability to get proper representation and defend against the charges. *Id* at 39-40.

Based on this testimony, Defendants argue that Plaintiff's claims are barred under *Heck v Humphrey*, 512 U.S. 477 (1994), because Plaintiff asserts that the privileges of which he was deprived contributed to his conviction. Further, with respect to Plaintiff's claimed mental anguish due to the lack of recreation, Defendants assert that dismissal is required because Plaintiff is precluded from pursuing claims for "mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e). Alternatively, Defendants contend that Plaintiff's lack of recreation claim fails on the merits.

Each of Defendant's arguments appears to be correct.

### i. Library and Telephone Access

Plaintiff's claim that he was deprived access to the law library and telephone may be precluded by *Heck*, even though Plaintiff only asks for monetary and injunctive relief and though he does not explicitly or directly challenge the validity of his conviction. In *Preiser v Rodriguez*, 411 U.S. 475, 489 (1973), the Supreme Court held that a prisoner may not bring a claim under §1983 to challenge the fact or duration of his confinement or to obtain immediate or speedier release; such claims must be brought through habeas corpus. *Heck* expanded on *Preiser* and held that, even if the prisoner only seeks monetary damages and does not attempt to gain a speedier release, he may not bring a damages action under §1983 which would necessarily require him to prove the unlawfulness of his conviction or confinement, unless the underlying conviction was deemed invalid:

> [I]n order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid, a
> §1983 plaintiff must prove that the conviction or sentence has been
> reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of habeas
> corpus.

512 U.S. at 486-487 (footnote omitted). *Heck* also applies to requests for remedial (as

opposed to prospective) injunctive relief. *See Edwards v Balisok*, 520 U.S. 641, 648

(1997). If a judgment in favor of the plaintiff "would necessarily imply the invalidity of his

conviction or sentence," the complaint must be dismissed unless the conviction or

sentence has already been invalidated. *Id* at 487. A plaintiff may only proceed if "the

district court determines that the plaintiff's action, even if successful, will *not*

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff." *Id.*

Plaintiff does not ask the Court to overturn his criminal conviction. The

allegations in his Complaint and his deposition testimony suggest that he intends to

base his request for damages solely on his claim that the lack of access hindered his

criminal defense and contributed to his conviction.

Specifically, Plaintiff alleges in his Complaint that Defendants Wayne County and

Sheriff Evans violated his "right to access to the courts." *See* First Amended Complaint

at ¶22(a). Plaintiff further says that "Defendant Dent's deliberate indifference to

[Plaintiff's] constitutional rights rendered [him] unable to assist his defense attorney to

adequately prepare for trial," and that "[Plaintiff's] ability to communicate with his

defense counsel was impeded by his denial of telephone access and law library access,

which impeded [the] litigation of his state trial." *Id* at ¶¶30, 35.

Plaintiff made similar assertions during his deposition.  With respect to the lack of

law library privileges, Plaintiff says:

> Q:     Okay.  You wanted access to the law library so you could help
>        your criminal defense attorney with the case?
>
> A:     Pretty much, yes.
>
> Q:     Because you were unable to research the case law and get
>        the books that you needed, I'm just trying to understand your
>        claim, are you saying that you were denied your constitutional
>        right to a fair trial?
>                                   * * *
> A:     I'm saying that along with all of the deprivations contributed,
>        yes.
>
> Q:     That in combination with other deprivations.
>
> A:     Yes.
>
> Q:     If you had--would have been allowed to get the legal
>        materials, do you think that would have resulted possibly in
>        your acquittal?
>
> A:     Yes, sir.

Def. Exh. B at p. 25.  Plaintiff also asserts that the lack of telephone access contributed

to his conviction:

> Q:     Do you believe that the jail's policy that kept you from using a
>        phone denied you a right to a fair trial?
>
> A:     Yeah, I believe it restricted my access to my attorney and
>        being able to communicate with my family, and . . . it created
>        a very big void in getting the proper representation as far as
>        like the attorney that they forced me to go to trial with, that
>        situation happened because I couldn't communicate with my
>        family . . . .
>
> Q:     So this particular claim of yours that relates to phone
>        privileges affected your conviction, it caused or at least helped
>        to cause your conviction?

A:     I believe so.

Def. Exh. B at pp. 39-40.

A finding that Plaintiff was deprived of adequate access to the law library and telephone would not necessarily have any bearing on the validity of his conviction because such a finding speaks only to the conditions of Plaintiff's confinement. However, in order to sustain either claim, Plaintiff will also have to show that he suffered actual injury. *Lewis v Casey*, 518 U.S. 343, 351 (1996); *Redhames v Nash,* 2005 W.L. 1532978 (M.D. Pa. 2005); *Ademola v Bureau of Prisons*, 2006 W.L. 2466840 (D. N.J. 2006). It is at this point that Plaintiff's claim appears to run into the limits of *Heck*. If Plaintiff's only injury is his allegedly wrongful conviction, his claim is prohibited by *Heck* because a verdict in Plaintiff's favor will indirectly imply that his criminal conviction is invalid. *See Nance v Vierrege,* 147 F.3d 589, 591 (7th Cir. 1998)(If plaintiff's only damages are based on his loss of his underlying case, *Heck* precludes the claim); *Banks v Sheahan*, 914 F.Supp. 231, 235 (N.D. Ill. 1995)(plaintiff cannot base claim for damages on wrongful conviction, but may seek other damages); *Penilton v Sacramento County*, 2005 W.L. 1366490 (E.D. Cal. 2005), *Report and Recommendation adopted by,* 2005 W.L. 1397376 (E.D. Cal. 2005)(actual injury based on claim that lack of access to law library prevented plaintiff from mounting defense at trial calls into question the validity of the verdict); *Hayes v Grundy County,* 2006 W.L. 385083 (N.D. Ill. 2006)(action barred because plaintiff had no claim for damages aside from injury caused by plea, which implied that his conviction was improper or invalid).

If the conviction is Plaintiff's damage claim, his library and telephone access claim must be dismissed based on the overwhelming case law cited above.

At oral argument, counsel for Plaintiff stated that he bases his damage claim on a deprivation of due process because of his erroneous classification. She argued that because Plaintiff was classified as a level one maximum security, he did not have the access to the law library and telephone that he was entitled to. However, this Court has already ruled (*Order of Partial Dismissal and Directing Service,* October 28, 2005) that the alleged incorrect classification did not allege a constitutional violation because an inmate does not have a right to a specific classification.

For all of these reasons, Plaintiff's library and telephone access claims are dismissed.

### ii.    Recreation

In his deposition, Plaintiff seems to identify an injury other than his allegedly wrongful conviction as a consequence of the alleged lack of adequate recreation-- mental anguish:

> Q:    How did the lack of recreation deny you a fair trial?
>
> A:    Well, I don't know that -- it could be a mental aspect, you know. I think I suffered mental anguish and, you know, to me personally the -- just the mental part of not being -- or being in a cage of that size and being, you know, put in that position that I was put in, you know what I'm saying, I just think it was unfair and it just created a situation where it was just totally hard for me to concentrate on defending myself, you know.

Def. Exh. B at p. 39. Although it is not clear from the authority cited by the parties, this may remove Plaintiff's claim from the bounds of *Heck*. At the hearing, no other injury was identified.

Plaintiff's claim  fails nonetheless, since mental anguish is the only injury he seeks to redress. Defendants are correct that the Prison Litigation Reform Act ("PLRA"),

42 U.S.C. §1997e(e), prohibits a prisoner from recovering damages under §1983 "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Since Plaintiff does not allege or present evidence that he suffered a physical injury as a result of his limited recreation, his claim is barred under the PLRA.

Plaintiff's claim also fails on the merits because he failed to establish that the lack of recreation amounted to a constitutional violation.  Defendants argue that Plaintiff failed to establish that they violated his Eighth Amendment right to be free from cruel and unusual punishment.  In fact, however, Plaintiff's claim must be analyzed under the Due Process Clause of the Fourteenth Amendment, because it is based on the conditions of his detention while he was held as a pretrial detainee.  *Bell v Wolfish*, 441 U.S. 520, 535 n. 16 (1979).  Under the Fourteenth Amendment, "a detainee may not be punished prior to an adjudication of guilt."  *Id* at 535.  Therefore, "[a] court must decide whether [the challenged condition or practice] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  *Id* at 538.  "Absent a showing of an expressed intent to punish on the part of jail officials, if such condition or restriction of pretrial detention 'is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Thompson v County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994).

Defendants argue that the limits placed upon Plaintiff's recreation did not rise to a constitutional violation because: 1) Plaintiff's restrictions were based on his classification; 2) Plaintiff was provided with an area large enough to do basic calisthenics for one hour every day; and 3) he was housed in a larger, single occupancy cell because of his restrictive classification.  Plaintiff does not dispute Defendant's

factual assertions. But, he argues that his activities were only so severely restricted because Defendants did not follow the WCJ policy in determining his security classification. Plaintiff's argument is unavailing.

Even if Plaintiff's assertion is true, the Court already ruled that "[a] prisoner has no constitutional right to be held in a specific security classification," *Order of Partial Dismissal and Directing Service,* October 28, 2005, and Plaintiff has not established that the deprivations he suffered constitute unlawful "punishment." That is, Plaintiff does not present evidence that his classification and the attending restrictions were placed upon him with the intent to inflict punishment. Plaintiff also does not present any evidence to refute the purported governmental interest in imposing the restrictions which are set forth in the WCJ Operations Manual--to ensure the safety and security of the staff and inmates. Def. Exh. E. Defendant's motion for dismissal, or in the alternative for summary judgment, is granted.

### B.  Excessive Force

After Plaintiff was convicted, he was moved from the WCJ to Jackson Prison on December 17, 2004 to begin serving his sentence. Plaintiff testified that Defendant Wade assaulted him on the day he was transferred. Plaintiff says Wade removed him from his cell and handcuffed him in preparation for transport to Jackson. However, Plaintiff says Wade cuffed him too tightly. When Plaintiff complained to Defendant Hogg, who was present with another officer, he says Hogg merely laughed and told him to file a grievance.

Shortly thereafter, Plaintiff was held in an area with other inmates. While there, Plaintiff says some inmates began to make jokes directed at Wade. Plaintiff says Wade

responded by "smashing" his handcuffs by twisting and tightening them, while Hogg and the other officer looked on but did nothing. When Plaintiff protested, Plaintiff says Wade tightened them more. Per Plaintiff, he was in such pain after the second time the cuffs were tightened he went down on one knee and his hands became numb. Plaintiff says that his pleas for the officers to loosen the cuffs were ignored. Plaintiff further says his hands swelled, his wrists turned purple, and he developed a lump on his right wrist. Plaintiff was in pain for several days. He still has a lump on his wrist, but the scarring and swelling healed.

Defendants Wade and Hogg have no recollection of the alleged incident, but they, nevertheless, deny Plaintiff's allegations. At oral argument, counsel argued that any incident would have been documented, and that the absence of a record evidences its non-occurrence.

Defendants also argue that there is no record of the grievance Plaintiff claims he filed, or medical documentation showing that Plaintiff requested medical attention for his hands/wrists after he arrived at Jackson. Plaintiff says he saw a doctor in the infirmary at Jackson about his hands/wrists on the day he arrived, and that the doctor gave him Tylenol. However, there is no record of this doctor visit in Plaintiff's MDOC medical file. Plaintiff's records for the day of transfer show that an MDOC Intake History Form was completed by a nurse as part of the mandatory medical screening at Jackson. But, there is no indication in the Intake History form that Plaintiff complained about injuries to his hands or wrists. There was also no notation that Plaintiff complained of or had visible injury to his hands or wrists when he had a physical examination by a physician's assistant three days later.

Plaintiff's §1983 excessive force claim is asserted under the Fourth and Eighth Amendments. However, Defendants correctly point out that the Eighth Amendment, rather than the Fourth Amendment, applies to Plaintiff's claim since the alleged assault occurred after he was convicted. *Pelfrey v Chambers*, 43 F.3d 1034, 1036-1037 (6th Cir. 1995). But, Defendants contend that Plaintiff failed to establish an Eighth Amendment violation.

The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon inmates. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause [of the Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v McMillian,* 503 U.S. 1, 6 (1992). Courts recognize that "maintenance of prison security and discipline may often require that prisoners be subjected to physical contact which at common law would be actionable as an assault." *Pelfrey*, 43 F.3d at 1037. However, contact which reflects "an unnecessary and wanton infliction of pain" violates the Eighth Amendment. *Id*; *Combs v Wilkinson,* 315 F.3d 548, 556 (6th Cir. 2002). Also, officers who are present when another officer uses improper force but fail to intervene may also be held liable for excessive force under §1983. *Bruner v Dunaway,* 685 F.2d 422, 426 (6th Cir. 1982).

Defendants argue that Plaintiff has not raised a question of fact on his excessive force claim because there is no evidence beyond his testimony to support his allegations or claim of injury. Alternatively, Defendants argue that Plaintiff's claim fails because he failed to exhaust his administrative remedies in accordance with the PLRA.

There is no merit to either claim.

With respect to the alleged assault, Defendants acknowledge that the Court must construe the evidence in the light most favorable to Plaintiff, and that absence of injury does not preclude an Eighth Amendment claim. *Hudson*, 503 U.S. at 7. However, Defendants cite the Supreme Court's recent decision in *Scott v Harris*, ___ U.S. ___, 127 S.Ct. 1769 (2007), and an unpublished Sixth Circuit opinion, *Reist v Orr,* 67 F.3d 300 (6th Cir. 1995), for the proposition that the Court is not obliged on summary judgment to accept testimony which is blatantly contradicted by other evidence in the record. Defendants also cite the Sixth Circuit's unpublished opinion in *Shelton v City of Taylor*, 92 Fed. Appx. 178 (6th Cir. 2004), where the Court affirmed a grant of summary judgment on plaintiff's claim of excessive force because plaintiff presented no evidence of his alleged injury. Defendants contend that Plaintiff's claims are overwhelmingly contradicted by their denials, the fact that Plaintiff's Jackson medical records are devoid of any indication that he complained of injury to his hands/wrists, and the lack of other medical evidence to corroborate his claim of injury.

The factors to consider in determining whether a prison officer's use of force was "unnecessary and wanton" include: 1) the extent of injury suffered by an inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7. Although it is the primary focus of Defendants' arguments in favor of summary judgment, the extent of injury a plaintiff suffered is merely one factor which must be weighed. *Id.* The absence of serious injury is relevant to the determination of whether

officers used more force than necessary and the extent to which the force used was malicious or sadistic. *Id.* But, it is not dispositive. *Id.*

Indeed, in *Pelfrey v Chambers, supra*, the Sixth Circuit defendants were not entitled to judgment on the pleadings where plaintiff alleged that, without provocation, two officers pulled out a knife, forced plaintiff's hands to his sides, and cut plaintiff's hair. Plaintiff Pelfrey did not allege any physical injury. But, defendants did not claim they acted in a good faith effort to maintain or restore order, and there was no basis to find that their alleged actions furthered a legitimate penological objective. The Court found that the evidence suggested that defendants acted gratuitously to frighten and degrade plaintiff, which was sufficient to state a claim under the Eighth Amendment for excessive force:

> [I]t would certainly appear that defendants' actions . . . were designed to frighten and degrade Pelfrey by reinforcing the fact that his continued well-being was entirely dependent on the good humor of his armed guards. To us, given the closed nature of the prison environment, this constitutes a totally unwarranted, malicious and sadistic use of force to cause harm.

43 F.3d at 1037.

Here, no medical evidence corroborates Plaintiff's claim that he suffered physical injuries as a result of the alleged assault. But, Plaintiff has a visible lump (which he asserts is a cyst) on his right wrist, and Plaintiff testified that he experienced severe pain and swelling while handcuffed and for several days thereafter. Plaintiff further claims that: 1) the actions taken against him were unprovoked; 2) both Defendants ignored his complaint that the cuffs were too tight and causing him pain; and 3) Defendant Wade tightened the cuffs further in retaliation for jokes by other inmates in the area.

Defendants do not present any evidence which refutes these claims. In fact, they claim to have no recollection of the incident. Even if Plaintiff's injuries were *de minimis*, reasonable jurors could find from Plaintiff's testimony that Defendants' alleged gratuitous infliction of pain was done "maliciously and sadistically to cause harm."

Defendants' reliance on *Scott* and *Reist* is misplaced. In *Scott*, plaintiff was seriously injured (rendered quadriplegic) while fleeing in a high-speed chase. The defendant officer bumped the car plaintiff was driving with his squad car in order to stop plaintiff. Plaintiff lost control of his car and crashed. The trial court denied summary judgment based on plaintiff's claim that the action taken to stop him was excessive because there was virtually no threat to pedestrians or other motorists during the chase since the roads were mostly empty and plaintiff remained in control of his vehicle. However, the Supreme Court found that the videotape of the chase directly refuted plaintiff's claims. The tape showed plaintiff driving recklessly down narrow, two-lane roads at night at excessive speeds, and that a number of other drivers were forced to move to the shoulder to avoid being hit. The Court held that the trial court was not obligated to accept plaintiff's version of events in the face of such incontrovertible evidence to the contrary:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

18

127 S.Ct. at 1776.

In *Reist,* the Sixth Circuit affirmed the trial court's grant of summary judgment to defendants where plaintiff alleged that three corrections officers used excessive force against him while returning him to his cell. But, the plaintiff did not present any evidence beyond his own statement, and defendants presented "a barrage" of unrefuted evidence to the contrary which included medical evidence, incident reports, and the witnesses, documents and evidence presented at plaintiff's major misconduct hearings. The *Reist* court acknowledged that an Eighth amendment claim is not precluded in the absence of a serious injury. However, it characterized Plaintiff's injuries as extremely minor and held that plaintiff's "self-serving statement [did] not sustain his burden of proof in light of the overwhelming evidence submitted by the defendants that minimal force was used to control an unruly prisoner." 67 F.3d at *3.

In this case, Defendants do not present evidence on par with defense evidence in *Scott* and *Reist.* Defendants rely solely on their denials and the inference it asks the Court to draw from Plaintiff's medical records. However, Defendants' denials ring hollow inasmuch as they claim to have no recollection of the incident. And, while Plaintiff's prison medical records suggest that he did not seek treatment for his alleged injuries, they do not conclusively refute Plaintiff's claim that he was assaulted and injured, or even that he, in fact, sought and received treatment. Unlike the defendants in *Scott* and *Reist*, Defendants here have not presented evidence which so utterly discredits Plaintiff's claim that no reasonable juror could believe him.

Defendant's reliance on *Shelton* is also misplaced. In *Shelton*, plaintiff alleged excessive force because the officers handcuffed him behind his back although his arm

was broken. (Plaintiff apparently did not claim that the officers broke his arm.). Plaintiff asked to be cuffed in the front and, approximately 1 minute before they arrived at the station, that the cuffs be removed. The defendant officers denied both requests, but cuffed plaintiff loosely. When they arrived at the station, plaintiff said they removed him from the patrol car by pulling on his broken arm.

The Sixth Circuit affirmed the trial court's grant of summary judgment to defendants because plaintiff failed to present any evidence that his arm was actually broken or that defendants were aware that it was broken. Additionally, plaintiff did not request medical attention during booking and he was smiling on his booking photo. The *Shelton* Court stated that "[h]andcuffing alone can amount to excessive force," but "without evidence of unreasonable force, the simple act of handcuffing a suspect in the course of a lawful arrest cannot form the basis of an excessive force claim." 92 Fed. Appx. at *182.

*Shelton* is distinguishable from the case before this Court because the *Shelton* plaintiff's claim was only that the officers cuffed him despite his injury. He did not complain about the cuffs themselves or any other use of force by the officers. Here, however, Plaintiff testified that: 1) the cuffs were too tight; 2) Defendants ignored his complaints of pain; and 3) Defendant Wade deliberately inflicted additional pain by tightening them more when Plaintiff complained.

There is a question of fact on Plaintiff's claim of excessive force. Defendants' motion for summary judgment on this claim is denied.

Defendants' alternate request for dismissal due to Plaintiff's failure to exhaust his administrative remedies through the WCJ grievance process is also denied. The PLRA

requires prisoners to exhaust "available" administrative remedies before filing a §1983 action:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted.

42 U.S.C.A. § 1997e(a)(emphasis added). *See also Booth v Churner,* 532 U.S. 731, 736 (2001).

It is undisputed that Plaintiff was transferred out of the WCJ to state MDOC custody within hours of the alleged assault. Defendants present no evidence that the WCJ grievance process was available to Plaintiff within the limited time he remained in county custody. And, since the WCJ and MDOC are separate entities, the WCJ grievance process was no longer available to Plaintiff after he was taken into MDOC's custody. *See Leacock v City of New York,* 2005 W.L. 323723, *5 (S.D.N.Y., Feb. 10, 2005)(an inmate's transfer from the custody of one jurisdiction to another deprived her of available administrative remedies for alleged deliberate indifference to medical needs which occurred one day before the transfer); *Baker v Andes*, 2005 W.L. 1140725, *6 (E.D. Ky. 2005)(inmate not obligated to complete grievance process where he was transferred out of the jail on the same day he filed a complaint). Defendants' request for dismissal on this ground should be denied.

### C.    Gross Negligence

"Under [Michigan's] governmental immunity act, [M.C.L. §691.1407], a governmental employee is not liable in tort for personal injuries as long as the employee's 'conduct does not amount to gross negligence that is the proximate cause

of the injury or damage'." *Oliver v Smith*, 269 Mich. App. 560, 565 (2006)(*quoting* M.C.L. §691.1407(2)(c)). "'[G]ross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. §691.1407(2)(c). An employee's conduct is "the proximate cause" if it is "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v City of Detroit,* 462 Mich. 439, 459 (2000).

Plaintiff asserts in Count IV that Defendant Wade's alleged actions were grossly negligent. Citing *Oliver v Smith*, *supra*, Defendant argues that a plaintiff must present evidence of a physical injury to come within the gross negligence exception to governmental immunity. Because Defendant contends there is no evidence to corroborate Plaintiff's claims of physical injury, he argues that Plaintiff's claim of gross negligence must be dismissed.

In *Oliver*, plaintiff alleged that defendant intentionally handcuffed his wrists too tightly during an arrest and ignored his pleas that they be loosened. In his request for summary judgment, defendant attached plaintiff's deposition testimony in which he testified that he complained that the cuffs were too tight and that defendant ignored his pleas, but not that he was injured as a result. The trial court noted that plaintiff failed to produce documentary evidence to raise a question of fact regarding whether he suffered an injury, but it denied summary judgment on the grounds that it was premature because discovery was not complete. Defendant appealed.

On appeal, defendant argued that he was entitled to summary judgment since plaintiff did not produce evidence that he suffered a physical injury. The *Oliver* court denied summary judgment on other grounds. But, it held that "a police officer's conduct

22

of handcuffing an individual too tightly does not constitute gross negligence unless physical injury results." 269 Mich. App. at p. 566. The Court relied in part on the reasoning of the Tenth Circuit in *Hannula v City of Lakewood*, 907 F.2d 129 (10th Cir. 1990), where the Court reversed the trial court's denial of summary judgment because the plaintiff failed to present medical evidence in support of her claim that she suffered severe injury as a result of tight handcuffs. The *Hannula* Court said the plaintiff showed that the cuffs caused pain, but not the level of severity claimed. Further, the Court said if the plaintiff's injury was minimal, it was likely that the force used to create the injury was also minimal. The *Oliver* Court found *Hannula's* reasoning persuasive and stated:

> [T]he reasoning of the Tenth Circuit, in *Hannula v. City of Lakewood,* 907 F.2d 129 (C.A.10, 1990), reinforces why establishing a physical injury requirement is logical. Evidence that handcuffing caused some pain but not injury is insufficient to establish excessive force in applying the handcuffs; if injury is minimal or nonexistent, then the force creating it must also be minimal and, therefore, not excessive. *Hannula, supra* at 132.

269 Mich. App. at 566.

Defendant reads *Oliver* narrowly to mean that evidence presented in support of a gross negligence claim based on alleged injuries suffered at the hands of an officer must take the form of documentary medical evidence. However, it is unclear whether Defendant's interpretation is what the *Oliver* court intended since the issue was not before the court in that context. The *Oliver* plaintiff did not present any evidence to support his claims, not even his own deposition testimony. *See* 269 Mich. App. at 569 (dissent). And, although the *Oliver* court relied upon the reasoning of *Hannula* for its finding that there is a "physical injury requirement," it is unclear from the *Hannula* opinion whether the plaintiff offered her assertions through deposition testimony which

23

the court rejected as insufficient, or if, like the *Oliver* plaintiff, she failed to even offer her own deposition testimony. Therefore, it is unclear whether either court intended to require that a plaintiff's testimony about alleged injuries be corroborated with medical documentation.

The Court has not found other cases interpreting this aspect of *Oliver* or which otherwise sheds light on the intended scope of its holding. However, in light of the vagueness of both *Oliver* and *Hannula*, the Court reads *Oliver* as broadly as it is worded: the gross negligence exception applies if plaintiff shows that he suffered physical injury as a result of defendants' actions. *Oliver* does not explicitly require that a plaintiff's evidence include medical documentation and there is no clear basis for reading such a requirement into the holding. Under federal and Michigan law, deposition testimony is cognizable evidence a plaintiff may rely upon to oppose summary judgment. *See Celotex Corp. v Catrett*, 477 U.S. 317, 324 (1986); M.C.R. §2.116(G)(3)(b). Plaintiff Ray testified that, as a direct result of the way Defendant Wade handcuffed him, he suffered severe pain and swelling for several days, and that he still has a lump on his wrist. Plaintiff also testified that Defendant Wade ignored his pleas to loosen the cuffs and deliberately tightened them further. Based on this testimony, reasonable minds could differ regarding whether Defendant's alleged acts amounted to "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury" would result. Defendant Wade's motion for summary judgment on this claim is denied.

## V.    CONCLUSION

Defendants' motion to dismiss Plaintiff's claims based on lack of telephone,

24

library access and recreation is **GRANTED**.

Defendants' motion for summary judgment or dismissal of Plaintiff's excessive

force claim and for summary judgment on Plaintiff's gross negligence claim, is **DENIED**.

Trial will proceed on these two claims.

**IT IS ORDERED.**

   _/s/ Victoria A. Roberts_     
Victoria A. Roberts
United States District Judge

Dated:  September 18, 2007

<div style="border:1px solid black; display:inline-block; padding:4px;">

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 18, 2007.

s/Linda Vertriest         
Deputy Clerk

</div>